# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TRUMBULL RADIOLOGISTS, INC. and PAUL GOULD, M.D., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) )C.A. No. N21C-04-044 MMJ CCLD ) | |
| PREMIER IMAGING TRI HOLDINGS LLC and RRIA EQUITY HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) ) ) | |

Submitted: September 15, 2021
Decided: November 29, 2021

Upon Defendants' Motion to Dismiss
**DENIED**

## OPINION

Dominick T. Gattuso, Esq., Aaron M. Nelson, Esq., Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware; Anthony J. O'Malley, Esq., Rajeev K. Adlakha, Esq. (Argued), Karey E. Werner, Esq., Vorys, Sater, Seymour and Pease LLP, Cleveland, Ohio, *Attorneys for Plaintiff Trumbull Radiologists, Inc. and Paul Gould, M.D.*

D. McKinley Measley, Esq. (Argued), Sabrina M. Hendershot, Esq., Michael J. Slobom, Jr., Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; Britt K. Latham, Esq., Bass Berry & Sims PLC, Nashville, Tennessee; Shayne R.

Clinton., Esq., Bass Berry & Sims PLC, Knoxville, Tennessee, *Attorneys for Defendants Premier Imaging Tri Holdings LLC and RRIA Equity Holdings, LLC*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

### *Parties*

This case arises from the termination of a stock purchase agreement ("SPA"). Plaintiff Trumbull Radiologists, Inc. ("TRI") is an Ohio corporation with its principal place of business in Ohio.[1] Plaintiff Paul Gould, M.D. ("Gould") is a stockholder and is designated as the Seller's Representative under the SPA.[2] Defendant Premier Imaging TRI Holdings, LLC ("Premier") is a Delaware limited liability company.[3] Defendant RRIA Equity Holdings, LLC ("RRIA") is a Delaware limited liability company.[4]

### *The SPA*

On February 28, 2019, the parties entered the SPA. Under the SPA, TRI and the Shareholders agreed to purchase all 120 issued and outstanding shares in TRI, at a price of $12 million.[5] As a condition to closing, TRI and non-party Riverside Radiology and Interventional Associates, Inc. ("Riverside") would need to submit

---

[1] Am. Compl. ¶ 1.
[2] *Id.* ¶ 10.
[3] *Id.* ¶ 3.
[4] *Id.* ¶ 4.
[5] *Id.* ¶¶ 10-12.

a winning bid to MHY Youngstown LLC ("MHY"). MHY owned Mercy Health at St. Elizabeth Hospital, St. Joseph Hospital (collectively, "Mercy"). The bid was for provision of services to the Mercy system.[6]

On June 17, 2019, Mercy informed TRI that its proposal had not been selected.[7] Thus, TRI was unable to comply with this closing condition.[8] At the time of the failure to obtain a winning bid, the SPA had a drop-dead closing date of September 30, 2019.[9] Prior to closing, Defendants required TRI to terminate its contractual relationship with Mercy. The purpose of termination was to prevent a conflict with an unrelated, pre-existing contract between an affiliate of Defendants and a different health care system.[10] On September 25, 2019, TRI provided the required six-month notice to Mercy that it was terminating the existing contract as of 5:00 p.m. EST on March 27, 2020.[11] TRI provided a copy of the termination notice to Defendants.[12]

### *Amendments One and Two*

On September 30, 2019, the parties entered into the First Amendment of the SPA.[13] Amended Section 13.01(e) updated the drop-dead date from September 30,

---

[6] *Id.* ¶¶ 13, 19.
[7] *Id.* ¶ 20.
[8] Def.'s Opening Br. in Supp. of its Mot. to Dismiss ("OB"), at 5.
[9] *Id.*
[10] Am. Compl. ¶ 21.
[11] *Id.* ¶ 22.
[12] *Id.*
[13] *Id.* ¶ 26.

2019 to October 15, 2019.[14]  On October 15, 2019, the parties entered into the Second Amendment.[15]  The Second Amendment further revised the drop-dead date to April 26, 2020.[16]  This Amendment also changed the baseline purchase price to $3 million, deleted TRI's requirement to be a successful bidder for the Mercy contract, and inserted new closing conditions.[17]  The newly-added closing conditions included a waiver of a non-competition provision in the existing Mercy contract and a due diligence condition.[18]

### *Defendants Repudiate the Agreement*

Following the Second Amendment, Riverside was in regular contact with TRI to facilitate the shift of necessary infrastructure to transition TRI into Riverside.[19]  Plaintiffs provided Defendants with access to all contracts, books, records, property, personnel, agents, accounts, and all other documents and data Defendants requested in connection with their due diligence investigation.[20]

On July 8, 2020, Defendants sent a correspondence, via email and U.S. mail, purporting to repudiate.[21]  Defendants alleged dissatisfaction with the results of the

---

[14] *Id.* ¶ 27.
[15] *Id.* ¶ 28.
[16] *Id.* ¶ 29.
[17] OB, at 6.
[18] *Id.* at 7.
[19] Am. Compl. ¶ 30.
[20] *Id.* ¶ 33.
[21] *Id.* ¶ 35, Ex. 4.

due diligence investigation.[22]  Plaintiffs counter that Defendants used the industry

impacts of the COVID-19 pandemic as a reason for not closing the transaction.[23]

Plaintiffs claim that the pandemic had a materially adverse effect on the deal.[24]

### *Procedural History*

TRI filed suit on January 21, 2021, in the Court of Chancery.[25]  Defendants

moved to dismiss the complaint due to lack of subject matter jurisdiction and lack

of standing.[26]  TRI elected to seek transfer to the Superior Court.  TRI amended the

complaint, adding Plaintiff Paul Gould, M.D., the Seller's Representative.[27]

Plaintiff's Amended Complaint asserts claims for: (1) breach of contract; and (2)

breach of the implied duty of good faith and fair dealing.[28]

Defendants filed a Motion to Dismiss.

### **MOTION TO DISMISS STANDARD**

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the

claimant "may recover under any reasonably conceivable set of circumstances

susceptible of proof."[29]  The Court must accept as true all well-pleaded

---

[22] *Id.* ¶ 35.
[23] Pl.'s Resp. & Opp'n to Def's Mot. to Dismiss, at 9.
[24] *Id.*
[25] OB, at 1.
[26] *Id.*
[27] *Id.*
[28] Am. Compl. at 10-11.
[29] *Spence v. Funk*, 396 A.2d 967, 968 (Del.).

allegations.[30]  Every reasonable factual inference will be drawn in the non-moving party's favor.[31]  If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[32]

"Under the present rules of the Superior Court, a cause of action need not be set forth with all the technical exactitude of allegation necessary under the rules of common law pleading. The present rules adopt a system of notice pleading rather than fully informative pleading as was theretofore required. The theory underlying the present rules is that a plaintiff must put a defendant on fair notice in a general way of the cause of action asserted, which shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses."[33]

## ANALYSIS

### *Breach of Contract*

Clause 12.01(h) of the Amended SPA provides:

(h) Due Diligence. Purchaser must be reasonably satisfied with the results of its due diligence investigation with respect to the business, operations, affairs, properties, assets, liabilities, and condition of the Company.[34]

---

[30] *Id.*
[31] *Wilmington Sav. Fund. Soc'v, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.).
[32] *Spence*, 396 A.2d at 968.
[33] *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952), *opinion adhered to on reargument*, 95 A.2d 460 (1953).
[34] Def. Ex. B at 5.

6

Plaintiffs specifically allege that Defendants' conduct leading to the anticipated SPA closing resulted in a breach of 12.01(h).[35]

Defendants argue that Plaintiffs have not properly stated a claim in the Amended Complaint. Therefore, the Answering Brief cannot be considered to augment allegations in the Complaint. Defendants assert that the Amended Complaint only clearly seeks to recover damages for TRI's unilateral decision to terminate the existing Mercy Contract at a time when Defendants had no obligation to close under the SPA.

Defendants also contend that they are not in material breach of the SPA. Defendants argue that SPA Section 13.01(e) and Amendment 1 to the SPA gave Defendants the right to terminate after expiration of the drop-dead date to closing. Additionally, Defendants state that Section 12.01(h) is a provision that "allows the buyer to terminate the agreement if it is not satisfied with results of its due diligence during the post signing phase."[36]

Defendants rely on *Ibach v. Dolle Candyland Inc.*,[37] arguing that the due diligence provision does not contain "a promise creating a right or duty but a mere limiting or modifying factor."[38] Defendants argue that the due diligence provision

---

[35] Am. Compl. at ¶ 45.
[36] Defendant's Opening Brief at 17 (citing Christopher M. Turoski, *Assets & Finance: Intellectual Property Mergers an Acquisitions* § 2:4 (2020 ed.)).
[37] 1991 WL 9980 at *8 (Del. Ch.).
[38] *Id*.

is a right belonging to the Defendants—not an obligation—thus, Defendants could not be found in breach.[39]  Therefore, Defendants claim that once the drop-dead date passed, it could terminate the SPA at any time.

Defendants further assert that the allegations in the Complaint are not sufficient to state a claim for breach of contract.  Defendants argue that Plaintiffs' allegation—that "Defendants' 'overt acts and inaction' gave Plaintiff the impressions . . . 'closing would be imminent'"[40]—is insufficient to state a claim because it fails to allege a specific act or representation made by any Defendant.[41]

Defendants also argue that the Amended Complaint is contradictory. Defendants assert that Plaintiffs originally stated:

> After the execution of the Second Amendment, Defendants' overt acts and inaction gave TRI the reasonable impression that once March 27, 2020 passed, the closing would be imminent . . . . [I]n the months immediately prior to the anticipated closing of the SPA, Riverside was in regular contact with TRI to establish and transfer the necessary infrastructure to transition TRI into the Riverside organization.[42]

Plaintiffs later stated that "in the months leading up to April 26, 2020, Defendants were slow to respond to Plaintiffs' questions regarding closing and documents and information transmitted as conditions to closing."[43]  Defendants argue that the

---

[39] Def. Op. Br. at 18.
[40] Am. Compl. at ¶ 30.
[41] Def. Op. Br. at 15.
[42] Am. Compl. at ¶ 30.
[43] *Id*. at ¶ 58.

internally inconsistent allegations in the Complaint should be considered fatal to the claim.

Defendants also claim that the closing date expiration did not impose any notice obligations on Defendants to communicate unwillingness to close.

Plaintiffs contend in the Amended Complaint that:

> Defendants have breached their obligations under the SPA, as amended, by refusing to close the Transaction on or before April 26, 2020. Moreover, Defendants breached Section 12.01(h) of the SPA by reviewing the results of the due diligence investigation in an arbitrary and unreasonable manner and by wrongfully invoking Section 12.01(c)'s MAE provision as a ruse not to close. Accordingly, Defendants frustrated the closing of the Transaction in violation of their contractual and legal obligations. [44]

Thus, Plaintiffs contend that they do not allege that refusal to close *after* the drop-dead date is a breach. Rather, Plaintiffs contend that the Defendants refused to close the transaction *by* the drop dead date—resulting in a breach of the contract.

Plaintiffs further allege that Defendants' conduct leading to the anticipated SPA closing frustrated the closing of the Transaction in violation of their contractual and legal obligations.[45] Plaintiffs assert that in the months immediately prior to the anticipated closing of the SPA, Riverside was in regular contact with TRI to establish and transfer the necessary infrastructure to transition TRI into the Riverside organization.[46]

---

[44] Am. Compl. at ¶ 45.
[45] *Id.*
[46] *Id.* at ¶ 30.

9

Plaintiffs contend that both Plaintiffs and Shareholders had satisfied their obligation under the SPA—as amended—and all the conditions prior to the scheduling of the closing were satisfied or had occurred.[47] Plaintiffs allege they materially changed their position in reliance upon Defendants' actions and representations. Plaintiffs state that Defendants refused to close the transaction by the drop-dead date despite Plaintiffs' readiness to close.[48] Plaintiffs further allege that they received no notice that they had breached any representation or warranty or failed to satisfy any covenant, condition or agreement required under the SPA.

Plaintiffs allege multiple instances of conduct constituting Defendants' breaches before the drop-dead date.

> (1) "Defendants breached their obligations under the SPA, as amended, by refusing to close the Transaction"[49];
> (2) Defendants "were to purchase 120 shares of capital stock in TRI upon satisfaction of the conditions to closing"[50];
> (3) "TRI and the Shareholders have satisfied their obligations and under the SPA, as amended, and all conditions prior to the scheduling of the closing were satisfied or have occurred"[51];
> (4) Plaintiffs "reasonably expected Defendants to work with them to advance toward closing,"[52] however the Defendants "were slow to respond to Plaintiffs questions regarding closing …"[53];
> (5) Defendants "deliberately stalled the Transaction…"[54];

---

[47] *Id*. at ¶ 44.
[48] *Id*. at ¶ 32.
[49] Am. Compl. at ¶ 45.
[50] *Id.* at ¶ 43.
[51] *Id.* at ¶ 44.
[52] *Id.* at ¶ 57.
[53] *Id.* at ¶¶ 57, 58.
[54] *Id.* at ¶ 59.

(6) "At no time prior to [the drop-dead date], did the Defendants complain about due diligence Plaintiffs provided"[55];

(7) "Defendants generally and without detail alleged that they were not satisfied with the results of the due diligence investigation, and in so doing Defendants acted unreasonably in contravention of the SPA"[56];

(8) "Defendants used their alleged dissatisfaction with due diligence and vague references to the COVID-19 crisis as a pretextual excuse for why they refused to close"[57];

(9) "Defendants have failed to identify a single, specific failure of a diligence condition"[58];

(10) Defendants course of conduct was "motivated by an improper purpose."[59];

Plaintiffs plead that Defendants acted unreasonably in refusing to close. Plaintiffs allege that Defendants were required to act according to a reasonableness standard—not a "materiality requirement,"—in accordance with the language in the SPA. Therefore, Defendants breached the SPA.

Plaintiffs contend TRI was ready, willing, and able to close by the drop-dead date. Plaintiffs had fulfilled all contractual obligations and complied with SPA requirements. Therefore, Defendants' failure to close is a breach of the SPA.

### *Implied Covenant of Good Faith and Fair Dealing*

The implied covenant of good faith and fair dealing inheres in all contracts and exists to fill unanticipated contractual gaps.[60] To state a claim for breach of

---

[55] *Id.* at ¶ 33.

[56] *Id.* at ¶ 35.

[57] *Id.* at ¶ 36.

[58] *Id.* at ¶ 39.

[59] *Id.* at ¶ 60.

[60] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super.).

11

the implied covenant, a claimant must allege: (1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage.[61]

The doctrine "operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."[62] "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty...unattached to the underlying legal document."[63]

Generally, a plaintiff cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement.[64]

> The implied covenant requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the bargain. Thus, parties are liable for breaching the covenant when their conduct frustrates the "overarching purpose" of the contract by taking advantage of their position to control implementation of the agreement's terms.[65]

Delaware courts will use the implied covenant to fill gaps only when a contract truly is silent on the disputed issue.[66] However, it is well-established that

---

[61] *Id.*

[62] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch.).

[63] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del.)(*internal citation omitted*).

[64] *Id.*

[65] *Id.* at 442.

[66] *Buck,* 2021 WL 673459, at *5.

"contingency clauses inherently contain an implied duty… to expend a good faith effort toward the satisfaction of the contingency."[67]

Section 12.01(h) of the SPA provides:

(h) Due Diligence. Purchaser must be reasonably satisfied with the results of its due diligence investigation with respect to the business, operations, affairs, properties, assets, liabilities, and condition of the Company.

Plaintiffs rely on *Rehoboth Resort Realty, Inc. v. Brittingham Enterprises Inc.,*[68] for the proposition that "the requirement of good faith extends to the satisfaction of contractual conditions or contingencies."[69] The Court found that the *Rehoboth* purchaser did not make good faith efforts to obtain financing under the contract. This Court held that "every contract imposes a duty of good faith in its performance."[70] A breach of the obligation of good faith in performance "may be overt or may consist of inaction…."[71]

In *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P,* [72] the Court of Chancery established that where a contractual provision warrants subjective,

---

[67] *Rehoboth Resort Realty, Inc. v. Brittingham Enterprises Inc.*, 1992 WL 207262, at *2 (Del. Super.), *aff'd sub nom. Skip & Judy, Inc. v. Rehoboth Resort Realty, Inc.*, 633 A.2d 371 (Del. 1993).
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] 1996 WL 560190, at *2 (Del. Ch.).

discretionary determination, "discretion must be exercised reasonably and in good faith."[73]

Plaintiffs also rely on *Westwood Development Partners, LLC v. Draper*.[74] *Westwood* involved a condition to closing. The *Westwood* plaintiff had the right to terminate if the defendant failed to supply a satisfactory audit report prior to final settlement.[75] This Court found that "the requirement of good faith extends to the satisfaction of contractual conditions or contingencies."[76] There is an implied covenant that a party cannot exercise a condition to the contract in bad faith. The Court held that whether a party manufactured an excuse to terminate the agreement is a question of fact, precluding entry of summary judgement.[77]

Defendants rely on *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*.[78] *Oxboe* addressed the interpretation of a discretionary clause within an LLC agreement, as it relates to the implied covenant of good faith and fair dealing. The Supreme Court noted that the implied covenant of good faith and fair dealing often comes into play when "a party to the contract is given discretion to act as to a certain subject and it is argued that the discretion has been

---

[73] *Id.*
[74] 2012 WL 2440144, at *1 (Del. Super.).
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] 202 A.3d 482 (Del.).

14

used in a way that is impliedly proscribed by the contract's express terms."[79]  The

Supreme Court found that "the implied covenant 'does not apply when the contract

addresses the conduct at issue,'[80] but only 'when the contract is truly silent'[81]

concerning the matter at hand."[82]

The Supreme Court further reasoned that "conferring discretion to a board

was a contractual choice to grant authority—not a gap."[83]  However, "the vesting

of a Board with discretion does not relieve the Board of its obligation to use that

discretion consistently with the implied covenant of good faith and fair dealing."[84]

The Supreme Court further notes that the *Oxboe* minority Board members did not

argue that the *Oxboe* board exercised its contractual discretion in bad faith. [85]

Defendants argue that the key aspects of the deal were addressed in the SPA.

Thus, Defendants assert that the implied covenant is inapplicable.

 "Merely repeating the defendant's allegedly improper acts or omissions

already the subject of a separate breach of contract claim is insufficient to support

a claim for breach of the implied covenant of good faith and fair dealing."[86]

---

[79] *Id*. at 504 n.93.
[80] *Id*. at 507 (quoting *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del.), as revised (Mar. 27, 2015)).
[81] *Id*. (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch.)).
[82] *Id*.
[83] *Id*. at 503.
[84] *Id*. at 503-04.
[85] *Id*.
[86] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *4 (Del. Super.).

"Where the contract specifically addresses the alleged misconduct, its terms will be applied, and an implied covenant claim will not stand."[87] "There cannot be a separate implied covenant claim involving the same conduct as the breach of contract claim."[88]

Here, Plaintiffs allege that Defendants breached the implied covenant by frustrating the advancement to closing and deliberately stalling. Plaintiffs assert that Defendants failed to work toward closing. Plaintiffs also contend that Defendants performed discretionary acts and obligations in bad faith as a pretext for not going forward with the transaction and for improper purposes. Plaintiffs allege that Defendant did not raise any concerns prior to the drop-dead date.

The Court finds that at this stage in the proceedings, implied covenant claims can be retained and litigated simultaneously and parallel to breach of contract claims as an alternative form of relief. The implied covenant claims are sufficiently different, at the pleading stage, from the breach of contract claims, so as to survive dismissal.

## CONCLUSION

The Court reviews Plaintiffs' claims under Delaware's notice pleading standard.

---

[87] *Id.*

[88] *Affy Tapple, LLC v. ShopVisible, LLC*, 2019 WL 1324500, at *4 (Del. Super.).

16

The Court finds that Plaintiffs have properly stated claims for breach of contract and violation of the covenant of good faith and fair dealing. The Amended Complaint pled: (1) Plaintiffs satisfied all conditions precedent to closing; (2) Plaintiffs were in all ways ready, willing, and able to close; and (3) Defendants failed to comply with SPA provisions to close by the drop-dead date.

There is no pleading obligation for Plaintiffs to provide detailed allegations, or to speculate as to Defendants' reasons for electing not to close the transaction prior to the drop-dead date.

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*
The Honorable Mary M. Johnston